## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD BRAUNSTEIN,<br><br>Plaintiff,<br><br>v.<br><br>KEMET CORPORATION, FRANK G. BRANDENBERG, WILFRIED BACKES, GURMINDER S. BEDI, JACOB KOTZUBEI, WILLIAM LOWE, E. ERWIN MADDREY, II, YASUKO MATSUMOTO, ROBERT G. PAUL, AND KAREN M. ROGGE,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Edward Braunstein ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Kemet Corporation ("Kemet" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Kemet and the Defendants.

**SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Kemet and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Yageo Corporation ("Parent"), and Sky Merger Sub Inc. ("Merger Sub," and along with Parent, "Yageo") (the "Proposed Transaction").

2. On November 11, 2019, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Yageo. Pursuant to the Merger Agreement, the Company's shareholders will receive $27.20 in cash per share of Kemet common stock owned (the "Merger Consideration").

3. On December 26, 2019, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Kemet and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Kemet shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. In addition, the Company's stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, the owner of Kemet shares.

9. Defendant Kemet is incorporated under the laws of Delaware and has its principal executive offices located at One East Broward Boulevard, Fort Lauderdale, Florida 33301. The Company's common stock trades on the NYSE under the symbol "KEM."

10. Defendant Frank G. Bradenberg ("Bradenberg") is and has been the Chairman of the Company's Board at all times during the relevant period.

11. Defendant Wilfried Backes ("Backes") is and has been a member of the Board at all times during the relevant period.

12. Defendant Gurminder S. Bedi ("Bedi") is and has been a member of the Board at all times during the relevant period.

13. Defendant Jacob Kotzubei ("Kotzubei") is and has been a member of the Board at all times during the relevant period.

14. Defendant William M. Lowe, Jr. ("Lowe") is and has been the Company's Chief Executive Officer and a member of the Board at all times during the relevant period.

15. Defendant E. Erwin Maddrey, II ("Maddrey") is and has been a member of the Board at all times during the relevant period.

16. Defendant Yasuko Matsumoto ("Matsumoto") is and has been a member of the Board at all times during the relevant period.

17. Defendant Robert G. Paul ("Paul") is and has been a member of the Board at all times during the relevant period.

18. Defendant Karen M. Rogge ("Rogge") is and has been a member of the Board at all times during the relevant period.

19. Defendants Bradenberg, Backes, Bedi, Kotzubei, Lowe, Maddrey, Matsumoto, Paul, and Rogge are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendant Kemet, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. Kemet, founded in 1919, is a leading global manufacturer of a wide variety of capacitors, and electro-magnetic compatible devices, sensors and actuators. With respect to capacitors, Kemet competes in the passive electronic component industry, specifically multilayer

ceramic, tantalum, film and aluminum (solid & electrolytic) capacitors. While Kemet competes in the passive electronic component industry, its strategic focus is on growth markets, specialty products requiring high reliability, and within its Ceramic product line, larger case size capacitors. The Company sells its products through direct sales and independent sales representatives.

### The Company Announces the Proposed Transaction

22. On November 11, 2019, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> NEW TAIPEI CITY, Taiwan and FORT LAUDERDALE, Fla., Nov. 11, 2019 (GLOBE NEWSWIRE) -- Yageo Corporation (TAIEX: 2327) ("Yageo") and KEMET Corporation ("KEMET") (NYSE: KEM) today announced that they have entered into a definitive agreement under which Yageo will acquire all of the outstanding shares of KEMET's common stock for US$27.20 per share in an all-cash transaction valued at US $1.8 billion, including the assumption of net debt. The transaction has been approved by the Boards of Directors of both companies.
>
> The purchase price represents a premium of 26% to KEMET's volume weighted average price ("VWAP") for the last 30 trading days and 37% to its VWAP for the last 90 trading days.
>
> Established in 1919 and headquartered in Fort Lauderdale, Florida, KEMET is a leading global supplier of high-end electronic components with a global footprint that includes 23 manufacturing facilities and approximately 14,000 employees located in 22 countries in the Americas, Asia and Europe. KEMET's main products include tantalum capacitors, ceramic capacitors, magnetic, sensors and actuators, and film and electrolytic capacitors. KEMET's products serve a number of applications, such as advanced automotive electronics, industrial applications, aerospace, medical, as well as smartphones, cloud/networking equipment, wireless communications, alternative energy and 5G technology. Holding more than 1,600 patents and trademarks worldwide, KEMET has established a leading position for its products via its advanced R&D and technical staff and design-in capabilities.
>
> Together with KEMET, Yageo will be well positioned as a one-stop provider of passive electronic components, including a leading portfolio of polymer, tantalum, ceramic, film and electrolytic capacitors, chip resistors, circuit protection as well as magnetics, sensors and actuators, all addressing a full range of end market segments. The combined company will have an enhanced global

footprint and be better able to partner with long-standing, blue chip customers worldwide through a combined 42 manufacturing plants and 14 dedicated R&D centers.

Pierre Chen, Chairman and Chief Executive Officer of Yageo, said, "KEMET has remarkable technology innovation capabilities and a proven track record of integrating cross-border acquisitions. We have been following their success with great admiration and look forward to creating a new legacy for the combined company. KEMET gives us the extraordinary opportunity to combine our strengths to achieve synergies in product and technology offerings as well as geographic coverage. The integration will enhance our ability to serve customers in consumer electronics as well as in the high-end automotive, industrial, aerospace, telecom and medical sectors. I look forward to partnering with KEMET's employees to drive future growth and deliver enhanced value for our shareholders and customers."

William M. Lowe, Jr., Chief Executive Officer of KEMET, said, "We are pleased to reach this agreement with Yageo, which will deliver the certainty of immediate cash to our shareholders at a premium. After a thorough process, the KEMET Board of Directors determined that this transaction is in the best interests of KEMET shareholders, customers and employees, and is a testament to our team's dedication to providing our customers with the broadest selection of passive component technologies and superior service in the industry. I am confident that the combination of these two companies will provide customers with an enhanced experience and our employees with greater opportunities worldwide and we look forward to completing this transaction and ensuring a seamless transition."

**Transaction Benefits**

The combination of Yageo and KEMET will create an industry leader in the $28 to $32 billion passive components industry, with combined annual revenues of approximately US$3 billion[1]. Yageo and KEMET each have a proven track record of completing major cross-border acquisitions and believe this transaction will generate greater value for customers and shareholders of both companies.

*   *   *

**Financing, Timing and Approvals**

The transaction is not subject to a financing contingency. Yageo intends to fund the transaction with a combination of cash on hand and committed financing.

The transaction, which is expected to close in the second half of 2020, is subject to customary closing conditions and the receipt of required regulatory approvals.

6

Following close of the transaction, KEMET will become a wholly owned subsidiary of Yageo and KEMET's common stock will no longer be listed on any public market.

**Advisors**

Citi is serving as financial advisor to Yageo, and Simpson Thacher & Bartlett LLP and Tsar & Tsai Law Firm in Taiwan served as legal advisors. Goldman Sachs & Co. LLC is serving as financial advisor to KEMET and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23. On December 26, 2019, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Management's Financial Projections

25. The Proxy Statement contains projections prepared by Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such

projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures in each of the forecasts provided to Yageo and Goldman Sachs, including: (i) Adjusted EBIT; (ii) Adjusted EBITDA; (iii) Adjusted EBITDA Margin; and (iv) Adjusted EPS.

29. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Goldman Sachs' Financial Opinion**

30. The Proxy Statement contains the financial analyses and opinion of Goldman Sachs & Co. LLC ("Goldman Sachs") concerning the Proposed Transaction, but fails to provide material information concerning such.

31. With respect to Goldman Sachs' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) unlevered cash flow for fiscal years 2020 through 2027; (ii) the inputs and assumptions underlying the range of discount rates of 11.0% to 13.0%, (iii) the range of illustrative terminal values for Kemet; and (iv) the number of fully diluted shares of Company common stock outstanding

32. With respect to Goldman Sachs' *Implied Premia and Multiples Analysis*, the Proxy Statement fails to disclose the net debt of the Company as of September 30, 2019.

33. With respect to Goldman Sachs' *Illustrative Present Value of Future Stock Price Analysts*, the Proxy Statement fails to disclose: (i) the total number of fully diluted shares of Company common stock outstanding; and (ii) the specific inputs and assumptions relied upon by Goldman Sachs' in selecting the discount rate of 12.1%.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

35. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

42. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or

11

failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

44. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

45. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Kemet within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Kemet, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

50. In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 3, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*